M.D. ANDERSON, Jr., et al.,
Petitioners,

v.

CITY OF SEVEN POINTS, Tx. &
Walter Talliaferro, Mayor Pro
Tem., Respondents.

No. C–9682.

Supreme Court of Texas.

Feb. 20, 1991.

Rehearing Overruled April 17, 1991.

**792**

Ronald D. Hinds, Reyna, Hinds & Crandall, Dallas, for petitioners.

Ronald R. Waldie, Seven Points, for respondents.

## OPINION

HIGHTOWER, Justice.

■■■■ This is an *appeal* in an action for a writ of mandamus initiated in the trial court.[1] In 1988, a petition requesting that the mayor order an election on the question of abolishing the corporate existence of the city of Seven Points was submitted to the mayor. After the mayor refused to order the election, a group of citizens filed a petition for writ of mandamus. The trial court granted the petition for writ of mandamus and ordered the mayor of the city of Seven Points to order the abolition election. The court of appeals reversed the judgment of the trial court and rendered judgment denying the petition for writ of mandamus. 805 S.W.2d 791. We reverse and remand this cause to the court of appeals.

In March 1988, a group of citizens (citizens) submitted a petition requesting that the mayor order an election on the question of abolishing the corporate existence of the city of Seven Points to the mayor. The petition contained the signatures of 207 persons. The mayor appointed a committee of three persons to study and evaluate the petition. Approximately six days later, the committee filed a report with the mayor and the city council. The report concluded that the petition contained the signatures of 176 qualified voters and that there were 358 qualified voters in the city of Seven Points "as close as can be determined." Based upon the report, the mayor

---

1. This is an appeal from an original proceeding for a writ of mandamus initiated in the trial court which is different from an original proceeding for a writ of mandamus filed in an appellate court. An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and the rules of procedure as any other civil suit:

> The relief sought to be effected through its aid is asked, as in any other case, by a petition alleging the facts by virtue of which it is claimed, with a prayer for such judgment as the facts warrant. The defendant is served and required to answer as in any other suit, and the case proceeds to trial and judgment as any other action, and there is no distinguishable difference in principle in the course of proceeding and result attained in it and any other suit in the District Court. When the judgment is rendered by the court, unless superseded or suspended by writ of error or appeal, it is carried into effect by the appropriate writ....

> \* \* \* \* \* \*

> And as this court has appellate jurisdiction in all manner of pleas, plaints, motions, causes and controversies, which may be brought before it from the District Court, we think it clear that the right of this court to review the judgment of the District Court cannot be denied. It must follow, as no distinction is made by the law authorizing an appeal in this and other cases, that the judgment of the District Court may be superseded by an appropriate bond for this purpose, pending the appeal in this court.

*Griffin v. Wakelee,* 42 Tex. 513, 516 (1875). *See Hughes v. McDonald,* 122 S.W.2d 366, 370 (Tex. Civ.App.—Austin 1938), *rev'd on other grounds,* 137 Tex. 21, 152 S.W.2d 327 (1941). An original proceeding for a writ of mandamus filed in an appellate court is governed by the unique requirements of Rule 121 of the Texas Rules of Appellate Procedure. TEX.R.APP.P. 121. *See Jannise v. Cain,* 759 S.W.2d 958, 960 (Tex.App.—Beaumont 1988, no writ). Furthermore, the granting of a writ of mandamus by a court of appeals may not be appealed to this court but is reviewable by writ of mandamus filed in this court. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917–18 (Tex.1985).

refused to order the election. Subsequently the citizens filed a petition for writ of mandamus and requested that the trial court order the mayor to order the abolition election.

At trial, the court, without a jury, heard conflicting testimony concerning the number of qualified voters in the city of Seven Points. Several witnesses testified that the number of qualified voters was between 240 and 260. The chairman of the committee appointed by the mayor to study and evaluate the citizens' petition testified that the total number of qualified voters was 358. In its findings of fact, the trial court found that the number of qualified voters of the city of Seven Points was less than 400 and that a petition signed by at least two-thirds of the qualified voters was submitted to the mayor. The trial court granted the petition for writ of mandamus and ordered the mayor (and anyone performing his duties and responsibilities) and the city of Seven Points "to perform all legal requirements for the holding of a valid election on the question of the abolition of the municipal corporate existence of the City of Seven Points and such election is to be held on the 6th day of May, 1989." The court of appeals, stating that the citizens failed to discharge their burden to present evidence that demonstrated that the mayor's refusal to grant the petition and order the election was arbitrary and unreasonable, reversed the trial court and rendered judgment denying the petition for writ of mandamus. 805 S.W.2d 791.

The citizens argue that they were not required to prove that the mayor's refusal to grant their petition and order the election was arbitrary and unreasonable. We agree.

■ A writ of mandamus will issue to compel a public official to perform a ministerial act. *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Depoyster v. Baker*, 89 Tex. 155, 34 S.W.

106, 107 (1896); *Parrish v. Wright*, 293 S.W. 659, 663 (Tex.Civ.App.—Amarillo 1927, writ ref'd); *Lampson v. South Park Ind. School Dist.*, 698 S.W.2d 407, 423–24 (Tex.App.—Beaumont 1985, writ dism'd). Furthermore, a writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion. However, this rule is not without exception—a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official. *Womack v. Berry*, 291 S.W.2d at 682; *Dykes v. City of Houston*, 406 S.W.2d 176, 183 (Tex.1966). This case, however, does not involve an abuse of discretion by a public official but involves the performance of a ministerial act by a public official.

■ The petition requesting that the mayor order an election on the question of abolishing the corporate existence of the city of Seven Points was filed pursuant to section 62.002 of the Texas Local Government Code which states:

(a) *The mayor of the municipality shall order an election on the question of abolishing the municipality's corporate existence* if a petition requesting that the election be held is submitted to the mayor and is signed by at least 400 qualified voters of the municipality. However, *if a majority of the qualified voters of the municipality is less than 400, the petition must be signed by at least two-thirds of the qualified voters of the municipality.*

(b) The mayor shall order the election to be held on the same date as the next general election at which the office of mayor is to be filled.

TEX. LOCAL GOV'T CODE ANN. § 62.002 (Vernon 1988) (emphasis added). Section 62.002 spells out the act to be performed by the mayor with sufficient certainty so that nothing is left to the exercise of discretion. Once the trial court determined that a majority of the qualified voters was less than 400 and the petition was signed by at least two-thirds of the qualified voters, the mayor had no discretion; therefore the act became ministerial and the trial court was required to grant the

petition for writ of mandamus and order an election on the question of abolishing the city's corporate existence. Thus, under the facts and circumstances of this case, we hold that the citizens were not required to prove that the mayor's refusal to grant their petition and order the election was arbitrary and unreasonable.

The remaining issue before this court is whether the evidence is legally insufficient to support the trial court's finding that the petition was signed by at least two-thirds of the qualified voters. Before we consider this issue, however, we must determine whether the trial court's finding that the petition was signed by at least two-thirds of the qualified voters is reviewable for legal sufficiency of the evidence.

■ In its findings of fact, the trial court found, among other things, that the number of qualified voters of the city of Seven Points was less than 400 and that a petition signed by at least two-thirds of the qualified voters was submitted to the mayor. In the court of appeals, the city of Seven Points asserted a point of error complaining that the evidence is legally insufficient to support the trial court's finding that the petition was signed by at least two-thirds of the qualified voters. Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *L.R. French v. Diamond Hill Jarvis Civic League,* 724 S.W.2d 921, 922 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.); *Reyes–Retana v. PTX Food Corp.,* 709 S.W.2d 695 (Tex.App. —San Antonio 1986, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal (and factual) sufficiency of the evidence by the same standards as applied in reviewing the legal (and factual) sufficiency of the evidence supporting a jury's finding. *Creative Mfg., Inc. v. Unik, Inc.,* 726 S.W.2d 207, 210 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.); *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Under these circumstances, we are unable to ascertain why a trial court's finding of fact in a petition for writ of mandamus should be subject to a different standard of review than any other finding of fact by a trial court. Therefore, we hold that the trial court's finding that the petition was signed by at least two-thirds of the qualified voters is reviewable for legal sufficiency of the evidence.[2]

■ We now consider whether the evidence is legally insufficient to support the trial court's finding that the petition was

**2.** Relying upon *Deal v. Bonner,* 700 S.W.2d 721 (Tex.App.—Beaumont 1985, no writ), the citizens argue that the standard of review on appeal in this case is whether the trial court abused its discretion in granting the petition for writ of mandamus. We disagree. Once the trial court determined that a majority of the qualified voters was less than 400 and the petition was signed by at least two-thirds of the qualified voters, the mayor had no discretion and the act became ministerial. Furthermore, under these circumstances, the trial court had no discretion and was required to grant the petition for writ of mandamus. If the trial court had not granted the petition for writ of mandamus, it would have committed reversible error. Similarly, if the trial court determined that a majority of the qualified voters was less than 400 and the petition was *not* signed by at least two-thirds of the qualified voters, the trial court would have no discretion and would be required to deny the petition for writ of mandamus. Under those circumstances, if the trial court had not denied the petition for writ of mandamus, it would have committed reversible error.

In *Deal v. Bonner,* a petition requesting an election on the question of abolishing the corporate existence of the city of Hudson was submitted to the mayor. After the mayor refused to order the election, a group of citizens filed a petition for writ of mandamus. After finding that the citizens' petition requesting an election was signed by more than 400 qualified voters, the trial court granted the petition for writ of mandamus and ordered the mayor to order the abolition election. 700 S.W.2d at 722. Among other things, the court of appeals, in dicta, stated "that appellate courts were reluctant to overturn district judges, either in the granting or refusing of a writ of mandamus, unless a clear abuse of the trial judge's discretion was lucidly demonstrated." *Id.* at 724. Since we are unable to ascertain why a trial court's finding of fact in a petition for writ of mandamus should be subject to a different standard of review than any other finding of fact by a trial court and we hold that the trial court's finding that the petition was signed by at least two-thirds of the qualified voters of the city of Seven Points is reviewable for legal sufficiency of the evidence, we disapprove *Deal v. Bonner* to the extent that it conflicts with this opinion.

signed by at least two-thirds of the qualified voters. In making this determination, we consider only the evidence and inferences tending to support the trial court's finding and disregard all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative value to support the trial court's finding that the petition was signed by at least two-thirds of the qualified voters, we must find that the evidence is legally sufficient. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661–62 (1951).[3]

 At trial, the court heard conflicting testimony concerning the number of qualified voters in the city of Seven Points. Several witnesses for the citizens testified that the number of qualified voters was between 240 and 260. Mr. M.D. Anderson, Jr., a former city councilman and a resident of the city since 1975, has actively campaigned for a local option election and for several city council elections. Mr. Anderson has gone door-to-door during these elections and has looked at every piece of property in the city. He testified that the total number of qualified voters when the petition was submitted to the mayor was between 240 and 260. Ms. Virginia Springer has been a resident of the city since 1973. Based upon her comparison of voter registration lists from former municipal elections and current voter registration information from certain precincts in the city, she testified that the total number of qualified voters in the city was between 247 and 250. The petition submitted to the mayor contained the signatures of 207 persons. However, the mayor's report concluded that the petition contained the valid signatures of 176 qualified voters and the court of appeals concluded that the petition contained the valid signatures of 198 qualified voters. Under these facts and circumstances, we hold that there is some evidence that the petition was signed by at least two-thirds of the qualified voters.

The City of Seven Points also asserted a factual insufficiency point of error in the court of appeals; however, the court of appeals sustained the point based upon its erroneous conclusion that the citizens failed to discharge their burden to present evidence that demonstrated that the mayor's refusal to grant the petition and order the election was arbitrary and unreasonable. Since we hold that the citizens were not required to prove that the mayor's refusal to grant their petition and order the election was arbitrary and unreasonable, we remand the cause to the court of appeals for reconsideration of the factual insufficiency point of error.

For the reasons explained herein, we reverse and remand this cause to the court of appeals.

---

**3.** Legal insufficiency challenges may only be sustained when the record discloses (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, and (4) the evidence established conclusively the opposite of the vital fact. *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362–63 (1960).