# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00137-CV

**Appellants, McAllen Hospitals, L.P. d/b/a McAllen Medical Center and d/b/a Edinburg Regional Medical Center and d/b/a Edinburg Children's Hospital and d/b/a McAllen Heart Hospital and d/b/a South Texas Behavioral Health Center; Fort Duncan Medical Center; Northwest Texas Healthcare System Inc.; and Laredo Regional Medical Center d/b/a Doctor's Hospital of Laredo // Cross-Appellants, Texas Health and Human Services Commission and Texas Health and Human Services Commission Office of Inspector General**

**v.**

**Appellees, Texas Health and Human Services Commission and Texas Health and Human Services Commission Office of Inspector General // Cross-Appellees, McAllen Hospitals, L.P. d/b/a McAllen Medical Center and d/b/a Edinburg Regional Medical Center and d/b/a Edinburg Children's Hospital and d/b/a McAllen Heart Hospital and d/b/a South Texas Behavioral Health Center; Fort Duncan Medical Center; Northwest Texas Healthcare System Inc.; and Laredo Regional Medical Center d/b/a Doctor's Hospital of Laredo**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-10-002274, THE HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants McAllen Hospitals, L.P.; Fort Duncan Medical Center; Northwest Texas Healthcare System, Inc.; and Laredo Regional Medical Center (collectively, the "Hospitals") sued the Texas Health and Human Services Commission (HHSC) and its Office of Inspector General (OIG) after the OIG sought to recoup funds previously paid by HHSC to the Hospitals for Medicaid reimbursement. In part, the Hospitals sought a writ of mandamus to compel HHSC to (1) review the OIG's decision in a formal administrative appeal and (2) reopen

certain cases where HHSC and the OIG had concluded that the Hospitals failed to provide a complete medical record. After the parties filed competing motions for summary judgment on the Hospitals' claims for mandamus relief, the trial court granted summary judgment in favor of HHSC and the OIG, in part, and in favor of the Hospitals, in part. The Hospitals subsequently filed a notice of appeal from the trial court's summary-judgment order, and HHSC and the OIG filed a notice of cross-appeal.

We conclude that the recoupments at issue are not sanctions "arising out of an investigation of fraud, waste, or abuse" under Rule 371.1601 and that, consequently, the trial court did not err in granting summary judgment in favor of HHSC and the OIG on the Hospitals' claim to compel HHSC to conduct a formal administrative hearing. We also conclude that the trial court did not err in granting summary judgment in favor of the Hospitals on their claim to compel HHSC to reopen certain cases. However, because the mandamus relief granted by the trial court fails to conform with the relief requested and with the record, we will modify the trial court's summary-judgment order as to this relief and, as modified, affirm.

## LEGAL BACKGROUND

Medicaid is a cooperative federal−state assistance program that uses public funds to pay for healthcare services provided to needy recipients. *Hawkins v. Dallas Cnty Hosp. Dist.*, 150 S.W.3d 535, 537 (Tex. App.—Austin 2004, no pet.) (citing 42 U.S.C. §§ 1396-1396w5 (Grants to States for Medical Assistance Programs)). HHSC administers the Texas Medicaid Program. *See* Tex. Gov't Code § 531.021; Tex. Hum. Res. Code § 32.021. The OIG is charged with investigating fraud, waste, and abuse in the Program, and for enforcing state laws relating to the provision of Medicaid in Texas. *See* Tex. Gov't Code § 531.102; 1 Tex. Admin. Code

2

§ 371.3 (HHSC, Purpose and Authority).[1]  In general, under the Texas Medicaid Program, healthcare service providers enrolled in the Program provide medically necessary treatment to eligible recipients and then seek reimbursement for the cost of those services by submitting a claim to HHSC.  *See* Tex. Hum. Res. Code §§ 32.029, .038; *see also* Texas Medicaid Provider Procedures Manual (current version at http://www.tmhp.com).

The dispute in this case arises from a disagreement about a process within the Texas Medicaid Program known as the Texas Medical Review Program (TMRP) and, more specifically, about the scope of the procedural protections afforded to service providers under TMRP.[2]  The TMRP is "the inpatient hospital utilization review process HHSC uses for hospitals reimbursed by HHSC's prospective payment system."  1 Tex. Admin. Code § 371.1(93) (defining "TMRP").  The TMRP is implemented by the HHSC Utilization Review Unit within the OIG and is governed by Subchapter C of Chapter 371 of Title 1 of the Texas Administrative Code.[3]  *See id.* §§ 371.200-.216 (Utilization Review).

Under Subchapter C, HHSC selects cases for TMRP utilization review "by a statistically valid random sampling methodology and/or focused case selection."  *Id.* § 371.201.

---

[1]  All citations to Title 1 of the Texas Administrative Code are to rules promulgated by HHSC.  Because the relevant portions of HHSC rules in effect at the time of the underlying dispute have not substantively changed, the parties have cited to the current version of the rules in their motions for summary judgment and in their appellate briefing.  Accordingly, unless otherwise stated, all citations to the Texas Administrative Code in this opinion are to the current version of the rules.

[2]  State plans for utilization review are required by federal law.  *See* 42 C.F.R. §§ 456.2 (state plan requirements), .23 (post-payment review process), .101 (utilization-review plan required for inpatient hospital services).  HHSC conducts the TMRP in accordance with applicable federal law.  *See* 1 Tex. Admin. Code § 371.200 (Inpatient Hospital Review Utilization Review Program).

[3]  Chapter 371 of Title 1 of the Texas Administrative Code is titled "Medicaid and Other Health and Human Services Fraud and Abuse Program Integrity."  *See id.* §§ 371.1-.1719.

Among other things, the TMRP process requires HHSC to evaluate "the medical necessity of the admission" underlying a service provider's claim for reimbursement. *Id.* § 371.203(a)(1). "For purposes of the TMRP utilization reviews, medical necessity means the patient has a condition requiring treatment that can be safely provided only in the inpatient setting." *Id.* In conducting this evaluation, "HHSC reviews the complete medical record for the requested admission(s)," including emergency room records, medical/surgical history and physical examination, discharge summary, physicians' notes, lab reports, diagnostic and imaging reports, pathology reports, nurses' notes, and therapy notes. *Id.* § 371.203(b). If HHSC concludes that the medical services could have been rendered on an outpatient basis and that, consequently, inpatient admission was not medically necessary, it notifies the service provider of the decision to retrospectively deny the claim and directs the claims administrator to recoup payment. *See id.* § 371.206(a) (Denials and Recoupments for TMRP, TEFRA Hospitals, and Facility-Specific Per Diem Methodology Reviews). As to the service provider's recourse upon receiving notification of an "adverse decision regarding medical necessity of admission" from the Utilization Review Unit, Rule 371.208 of the Texas Administrative Code provides:

> [T]he hospital may appeal to HHSC. The written notification of adverse decision sets out the responsible area and time frame within which the appeal must be received by HHSC. The Texas Medicaid Policy and Procedure Manual provides additional information on the appeal process.

*Id.* § 371.208 (Appeals Related to Utilization Review Department Review Decisions); *see also* Texas Medicaid Provider Procedures Manual (current version at http://www.tmhp.com).

4

## PROCEDURAL BACKGROUND

The undisputed evidence in this case establishes that the Hospitals are healthcare service providers enrolled in the Texas Medicaid Program. In February 2010, the Hospitals received a "Notice of Admission Denial(s)" from the Utilization Review Unit. In the Notice, the Utilization Review Unit informed the Hospitals that it had reviewed approximately thirty-six reimbursement claims previously submitted by the Hospitals and that the Unit had determined, "after review of the information contained in the medical record(s), that the [inpatient] admission(s) [on which the reimbursement claims were based] . . . were not medically necessary." Because the admissions had occurred years earlier and because the Hospitals had already been reimbursed for the services, the Utilization Review Unit also informed the Hospitals that it was processing "[a]n admission denial . . . for each admission" and that the payment on the claims would be recouped. Finally, the Notice advised the Hospitals that if they were dissatisfied with the Utilization Review Unit's decision, they could submit a request for a written appeal.

The Hospitals subsequently appealed the denial and recoupment decisions to HHSC UR/Medical Appeals (the "Medical Appeals Unit"), as provided for by Rule 371.208 and as directed by the Notice. The Hospitals' appeal consisted of a written appeal supported by a written explanation as to why the inpatient services were medically necessary. As to each admission, the Medical Appeals Unit upheld the Utilization Review Unit's decision to deny the claim and recoup payment. As to three of the admissions, the Medical Appeals Unit explained in its written notifications to the Hospitals that it was upholding the Utilization Review Unit's decision because the "the documentation provided is incomplete and insufficient." In addition, the notifications informed the Hospitals that the Medical Appeals Unit's "determination is the final administrative decision in your appealed case. Therefore, in accordance with

5

Medicaid program policies and procedures, this determination is now considered final and the case is closed."

Despite the Appeal Unit's assertion of finality, the Hospitals sent a letter to the OIG Manager of Sanctions stating that they wished to administratively appeal the Utilization Review Unit's denial and recoupment decision and requesting that the OIG forward their appeal to HHSC's Appeals Division for docketing. The Medical Appeals Unit denied the Hospitals' request by letter. The Medical Appeals Unit explained, "The administrative rules governing hospitalization review are located at [Texas Administrative Code, Section] 371.208. Your client has availed itself of its appellate remedies and there are no other available avenues for appeal."

The Hospitals subsequently filed suit against HHSC and the OIG, seeking in part mandamus relief related to the defendants' (1) refusal to forward the Hospitals' request for a formal administrative hearing for docketing and (2) denial of at least some of the Hospitals' claims on the ground that the Hospitals had provided an "incomplete and insufficient" medical record.[4] The Hospitals subsequently filed a traditional motion for summary judgment on their mandamus claims. In their motion for summary judgment, the Hospitals argued that they were entitled to mandamus relief on their claim to compel HHSC and the OIG to forward the Utilization Review Unit's denial and recoupment decision to HHSC's General Counsel for docketing because, according to the Hospitals, they are entitled to a formal administrative appeal under what is now Rule 371.1615. *See* 1 Tex. Admin. Code § 371.1615 (Appeals, formerly

---

[4] The Hospitals also asserted claims for declaratory relief and alleged that the defendants' actions constituted a taking without due process of law and without due course of law. HHSC and the OIG filed a plea to the jurisdiction based on sovereign immunity, which the trial court granted. On appeal, the Amarillo Court of Appeals affirmed the trial court's jurisdictional ruling and dismissal as to all of the Hospitals' claims with the exception of their claims for mandamus relief. *See McAllen Hosps. v. Suehs*, 426 S.W.3d 304, 316-18 (Tex. App.—Amarillo 2014, no pet.).

*id.* §§ 371.1667, .1669). The Hospitals also asserted in their motion that they were entitled to mandamus relief as a matter of law on their claim to compel HHSC and the OIG to reopen all matters where HHSC had denied the Hospitals' claim due to an incomplete medical record without providing an opportunity to supplement the record under Rule 371.206(a)(2). *See id.* § 371.206(a)(2) (outlining types of TMRP denials, including "a technical denial" "when a hospital fails to make the complete medical record available for review"). In response, HHSC and the OIG filed a cross-motion for summary judgment, asserting that the Hospitals' mandamus claims were premised on an incorrect construction of HHSC's administrative rules and that, as a matter of law, the Hospitals could not establish that HHSC had failed to comply with any ministerial duty.

The trial court subsequently signed an order denying the Hospitals' motion for summary judgment in part and granting HHSC and the OIG's cross-motion for summary judgment in part. As to the Hospitals' claim to compel a formal administrative appeal, the trial court granted summary judgment in favor of HHSC and the OIG. As to the Hospitals' claim to compel HHSC to reopen claims denied due to an incomplete medical record, the trial court granted summary judgment in favor of the Hospitals. This appeal and cross-appeal followed.

**STANDARD OF REVIEW**

Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We review a trial court's ruling on a motion for summary judgment under a de novo standard of review. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). When both parties move for summary judgment on overlapping issues and the

7

trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides and determine all questions presented. *Texas Ass'n of Acupuncture & Oriental Med. v. Texas Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 738 (Tex. App.—Austin 2017, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). If we determine that the trial court erred, we render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

To the extent our appellate review requires us to interpret HHSC's rules, we review these questions of law de novo. *CenterPoint Energy Hous. Elec., LLC v. Public Util. Comm'n of Tex.*, 408 S.W.3d 910, 916 (Tex. App.—Austin 2013, pet. denied) (citing *Rodriguez v. Services Lloyds Ins.*, 997 S.W.2d 248, 254 (Tex. 1999)). Because administrative rules have the same force and effect as statutes, we interpret administrative rules using traditional principles of statutory construction. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Our primary objective is to give effect to the intent of the issuing agency, "which, when possible, we discern from the plain meaning of the words chosen." *See Heritage on the San Gabriel Homeowners Ass'n v. Texas Comm'n on Env't Quality*, 393 S.W.3d 417, 425 (Tex. App.—Austin 2012, pet. denied) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). If the rule is ambiguous, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical*, 340 S.W.3d at 438.

## MANDAMUS STANDARD

In this case, the parties filed competing motions for summary judgment on the Hospitals' claims for mandamus relief. A writ of mandamus may be used to compel a public

official to perform a "ministerial act," which, for purposes of mandamus, is an act where "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018); *Janek v. Harlingen Fam. Dentistry, P.C.*, 451 S.W.3d 97, 101 (Tex. App.—Austin 2014, no pet.) (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)). "If an action involves personal deliberation, decision, and judgment, it is discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice are ministerial." *Janek*, 451 S.W.3d at 101 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)).

## ANALYSIS

*Claim to Compel an Administrative Hearing*

In their first issue on appeal, the Hospitals complain that the trial court erred in denying their motion for summary judgment on their claim to compel the OIG to forward their request for a formal administrative hearing to HHSC's Appeals Division for docketing.

Subchapter G of Chapter 371 is titled "Administrative Actions and Sanctions," and Rule 371.1615, found in Subchapter G, provides that "[a] person who is served with final notice of a sanction may appeal the imposition of the sanction." 1 Tex. Admin. Code § 371.1615(a) (Appeals). When the OIG receives a request for an administrative hearing at the Appeals Division under Rule 371.1615, "the OIG contacts the Appeals Divisions . . . to request that the hearing be docketed." *Id.* § 371.1615(b)(8). In their motion for summary judgment, and now on appeal, the Hospitals assert that the Utilization Review Unit's decision to direct the recoupment of funds previously paid to the Hospitals constitutes a "sanction" under Rule 371.1615 and that,

9

therefore, HHSC had a ministerial duty to provide the Hospitals with a formal administrative hearing, upon their timely request.

In response, HHSC and the OIG assert that the trial court did not err in concluding that the Utilization Review Unit's decision did not trigger any ministerial duty on the part of the HHSC to provide a formal administrative hearing because, in HHSC and the OIG's view, a recoupment directed as a result of Utilization Review is not a "sanction" as that term is used in Rule 371.1615. Upon review of the relevant provisions set forth in Chapter 371 of the Texas Administrative Code, we agree.

Rule 371.1 sets out ninety-six definitions applicable to Chapter 371. *See id.* § 371.1 (Definitions) ("The following words and terms, when used in this chapter, have the following meanings unless the contest clearly indicates otherwise[.]"). Among these definitions, the term "[o]verpayment" is defined, in relevant part, as

> [t]he amount paid by Medicaid or other HHS program or the amount collected or received by a person by virtue of the provider's participation in Medicaid or other HHS program that exceeds the amount to which the provider or person is entitled under [governing Medicaid law]. This includes:
>
> (A) any funds collected or received in excess of the amount to which the provider in entitled, whether obtained through error, misunderstanding, abuse, misapplication, misuse, embezzlement, improper retention, or fraud[.]

*Id.* § 371.1(55). In turn, Rule 371.1(72) defines the term "recoupment of overpayment" as "[a] *sanction* imposed to recover funds paid to a provider or person to which the person was not entitled." *Id.* § 371.1(72) (emphasis added). Finally*,* Rule 371.1(75) defines the term "sanction" as "[a]ny administrative enforcement measure imposed by the OIG pursuant to this subchapter other than administrative actions defined in § 371.1701 of this subchapter (relating to

10

Administrative Actions)." *See id.* § 371.1(75). Although Rule 371.1701 does provide a specific definition for the phrase "administrative actions," the rule does include a non-exhaustive list of twelve actions that when taken by the OIG, qualify as "administrative actions." *See id.* § 371.1701 (Administrative Action). That list consists primarily of non-monetary actions and does not expressly include recoupment of overpayment arising from the TMRP. *See id.* § 371.1701(c)(1)-(12); *see also id.* § 371.1701(d) (providing specific notice requirements for administrative actions). Based on the definitions set forth in Rule 371.1, we conclude that a decision by the Utilization Review Unit to direct the recoupment of funds from a provider may, at least in some contexts, constitute a "sanction." Nevertheless, for the reasons discussed below, we cannot conclude that the Utilization Review Unit's decision in this case is a "sanction" that entitles the Hospitals to administrative hearing under Rule 371.1615.

As previously discussed, Rule 371.1615 provides a right to an administrative appeal for the imposition of a "sanction." *See id.* § 371.1615. However, Rule 371.1601 states that, "[u]nless otherwise provided, this subchapter applies to all administrative actions and sanctions imposed by the OIG and arising out of an investigation of fraud, waste, or abuse." *Id.* § 371.1601 (Applicability). In other words, the provisions of Subchapter G, which includes Rule 371.1615, are limited to sanctions "imposed by the OIG and *arising out of an investigation* of fraud, waste, or abuse." *Id.* (emphasis added). Therefore, any right to an administrative appeal from a HHSC or OIG decision to recoup an overpayment is limited to those recoupment decisions "*arising out of an investigation* of fraud, waste, or abuse." *Id.* (emphasis added); *see* Tex. Gov't Code §§ 531.120 ("Notice and Information Resolution of Proposed Recoupment of Overpayment or Debt," providing that HHSC or OIG shall provide written notice of proposed recoupment of overpayment or debt "arising out of a fraud or abuse investigation").

11

The procedures for conducting an "investigation" are detailed in Subchapter F of Chapter 371. *See* 1 Tex. Admin. Code §§ 371.1301-.1312 (Investigations). For example, after receiving a complaint, the OIG begins the investigation process by conducting a "preliminary investigation," as detailed in Rule 371.1305, and then "prepares a preliminary report before the allegation of fraud or abuse proceeds to a full investigation." *Id.* § 371.1305 (Preliminary Investigation). The OIG begins a full investigation within 30 days of completing the preliminary investigation if it determines that a full investigation is warranted. *Id.* § 371.1307 (Full Investigation). The full investigation must be completed within 180 days unless the OIG determines that more time is needed to complete the investigation. *Id.* § 371.1307(c). The results of an investigation may subject a provider to a wide range of enforcement measures, *see id.* §§ 371.1701-.1719, including exclusion from the Medicaid program, *see id.* § 371.1707 (Permissive Exclusion). Notably, if the OIG determines that an overpayment resulted without wrongdoing, the OIG may refer the matter for routine payment correction by the agency's fiscal agent or an operating agency or may offer a payment plan. *See id.* § 371.1603(b) (Legal Basis and Scope); *see also id.* § 371.1(84) (defining "system recoupment" as "[a]ny action to recover funds paid to a provider or other person to which they were not entitled by means other than the imposition of sanction under these rules" and "may include any routine payment correction by an agency or an agency's fiscal agent to correct an overpayment that resulted without wrongdoing").

Because the Hospitals do not contend, and the evidence does not otherwise suggest, that the recoupment decision at issue in this case arose out of "an *investigation* of fraud, waste, or abuse," *see id.* § 371.1601 (emphasis added), we conclude that, as a matter of law, the Hospitals were not entitled to an administrative hearing under Rule 371.1615. Because HHSC and the OIG did not have a ministerial duty to provide the Hospitals with a formal administrative

12

hearing, the trial court did not err in granting summary judgment in favor of HHSC and OIG on this claim.

*Claim to Compel the Reopening of Technical Denials*

Next, we turn to the parties' competing appellate issues challenging that portion of the trial court's order "compelling [HHSC and the OIG] to reopen all claims where technical denial of claims were not issued." First, we consider HHSC and the OIG's issue on cross-appeal, in which they complain that the trial court erred in granting summary judgment in favor of the Hospitals on their claim to compel HHSC to comply with "proper procedures when reviewing [medical] records for admission denials."

In their pleadings in the trial court, the Hospitals alleged that HHSC and the OIG failed to follow proper procedures when they denied some of the Hospitals' claims on the ground that the Hospitals had provided an incomplete medical record. Specifically, the Hospitals argued that HHSC and the OIG failed to comply with Rule 371.206(a)(2), which outlines the types of denial that HHSC may issue under TMRP and other similar programs. *See id.* § 371.206(a)(1)-(5). In relevant part, Rule 371.206(a)(2) authorizes HHSC to deny an admission as a "technical denial when a hospital undergoing TMRP fails to make the complete medical record available for review within a specified time frame." *Id.* § 371.206(a)(2). For mail-in review, the type of review which occurred in this case, this process begins when HHSC requests, in writing, that the hospital submit copies of medical records for utilization review. *Id.* § 371.206(a)(2)(B). If the hospital fails to submit the complete medical record as requested, HHSC then issues a "preliminary technical denial" by certified mail or fax. *Id.* Upon notice, the hospital then has 60 calendar days to, in effect, cure the "preliminary technical denial" by submitting the complete medical record. *Id.* If the hospital fails to submit the complete medical record within this time

13

frame, HHSC then issues a "final technical denial." *Id.* Based on the plain language of Rule 371.206(a)(2)(B), before it may deny a claim under TMRP review based on an incomplete medical record, HHSC must first notify the hospital that it is issuing a preliminary technical denial based on an incomplete medical record and that the hospital may supplement the medical record within the specified time frame.

In their motion for summary judgment, the Hospitals argued that, as to at least some of the claims denied by the Utilization Review Unit and upheld by the Medical Appeals Unit, the undisputed evidence establishes that HHSC and the OIG failed to comply with their ministerial duty under Rule 371.206(a)(2)(B) to provide the Hospitals with an opportunity to provide additional medical records before issuing a final denial of the claim. In support of their motion for summary judgment, the Hospitals attached copies of written notifications received by the Hospitals from the Medical Appeals Unit, in which the Medical Appeals Unit explained that it was upholding the Utilization Review Unit's denial as to three in-patient admissions because the "documentation is incomplete and insufficient." However, as the Hospitals point out, nothing in the record—including in the "Notice of Admission(s) Denial" informing the Hospitals of the TMRP and the Utilization Review Unit's decision to deny the claims and recoup payments—suggests that the Hospitals were ever informed that the Utilization Review Unit considered the submitted medical record to be incomplete as to any admission, that the Unit was issuing a "preliminary technical denial," or that the Hospitals had 60 days to submit additional medical records. *See id.* § 371.206(a)(2)(B). In other words, in the Hospitals' view, the record establishes that HHSC issued technical denials as to each of these admissions without first providing the Hospitals with an opportunity to cure the incomplete medical record.

14

On cross-appeal, HHSC and the OIG assert that the trial court erred in granting summary judgment in favor of the Hospitals on their claim for mandamus relief relating to technical denials under Rule 371.206(a)(2). HHSC and the OIG do not dispute that the Hospitals were never provided with a preliminary technical denial or any other opportunity to cure the "incomplete and insufficient" medical record. Instead, they argue that only the OIG's Utilization Review Unit can issue a technical denial, and because the evidence establishes that the Medical Appeals Unit, and not the Utilization Review Unit, issued the written notification upholding the denial based on "incomplete and insufficient documentation," the notifications do not constitute "technical denials" within the meaning of Rule 371.206(a)(2)(B). Consequently, HHSC and the OIG reason, the requirement of a preliminary technical denial does not apply under the facts of this case. Based on the plain language of Rule 371.206(a)(2), however, we disagree with HHSC and the OIG's contention that only the Utilization Review Unit can issue a technical denial.

While the OIG's Utilization Review Unit has been tasked by HHSC with the responsibility of carrying out utilization review and the Medical Appeals Unit has been tasked with reviewing the Utilization Review Unit's decisions, Rule 371.206(a)(2), by its express terms, applies broadly to denials issued by "HHSC." *Id.* § 371.206(a)(2) ("HHSC issues a technical denial when a hospital fails to make the complete record available for review"); *see id.* § 371.1(34) (defining "HHSC," to mean "the Texas Health and Human Services Commission, its successor, or designee"); *cf., e.g.*, *id.* §§ 371.203(d) (specifically requiring that "the OIG" conducts training for providers), .208 (specifically referring to appeals of decisions by "HHSC Utilization Review Unit"). There is no dispute that both the OIG's Utilization Review Unit and the Medical Appeals Units are both divisions of HHSC. Therefore, contrary to HHSC and the OIG's assertion, the requirements of Rule 371.206(a)(2) are not limited to TMRP decisions made by the

15

Utilization Review Unit, and the rule does not carve out any exception for denials by the Medical Appeals Unit.[5]  Consequently, a decision by the Medical Appeals Unit to uphold a denial based on its conclusion that there is "incomplete and insufficient documentation" is, in effect, a "technical denial" by HHSC within the meaning of Rule 371.206(a)(2(B).  Based on the summary-judgment record, we conclude that HHSC failed to comply with its ministerial duty under Rule 371.206(a)(2)(B) to provide the Hospitals with an opportunity to submit a complete medical record before denying the Hospitals' claims on this ground.

*Scope and Form of Mandamus Relief as to Technical Denials*

Having concluded that the trial court did not err in granting summary judgment on the Hospitals' claim as to HHSC and the OIG's failure to comply with Rule 371.206(a)(2)(B)'s requirements for issuing technical denials with regard to at least some of the Hospitals' claims, we next consider the parties' complaints as to the form of the mandamus relief granted on this issue.

In their second appellate issue, the Hospitals complain that, although the trial court properly granted summary judgment in their favor on this issue, the court failed to issue the precise mandamus relief requested and to include the details necessary for HHSC to comply. Specifically, according to the Hospitals, they requested that trial court compel HHSC and the

---

[5]  In support of their argument that the requirements of Rule 371.206(a)(2) only apply to decisions to deny made the Utilization Review Unit, HHSC and the OIG rely primarily on the procedures for appeals outlined in the 2010 Texas Medicaid Provider Procedures Manual (http://www.tmhp.com).  To the extent the procedures in the Manual represent HHSC's formal interpretation of Rule 371.206, its own administrative rule, we conclude that this interpretation conflicts with the plain language of the rule and that, as a result, the language of the rule itself controls.  *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) (explaining that we do not defer to agency's interpretation if it "fails to follow clear, unambiguous language of its own regulations").

OIG to "comply with the technical denial process set forth in [Rule 371.206(a)(2)(B)]" and to "reopen all matters where [HHSC and the OIG] recouped payments from [the Hospitals] without first issuing a technical denial and without permitting [the Hospitals] to supplement the medical records within the time period specified by law." In contrast, the trial court's order states simply that the OIG must "reopen all claims where technical denial of claims were not issued." The Hospitals request that we modify this portion of the judgment and "render the writ of mandamus relating to technical denials with sufficient specificity to effectuate the trial court's ruling." *See Etheridge v. Opitz*, 580 S.W.3d 167, 183 (Tex. App.—Tyler 2019, pet. dism'd) ("We have the authority to modify incorrect judgments when the necessary information is available to do so." (citing Tex. R. App. P. 43.2(b))).

Similarly, HHSC and the OIG argue that the order's language is "void for vagueness, lack of definitiveness or specificity, and lack of support by summary-judgment evidence." They contend that by requiring the Utilization Review Unit to "reopen all claims where technical denial of claims were *not* issued," the trial court's order (presumably, in error) in fact requires the Unit to open claims where the Hospitals had submitted a complete medical record. In addition, HHSC and the OIG point out that the only claims identified by the Hospitals in their motion for summary judgment were the three specific admissions that were the subject of the Medical Appeals Unit's written notifications of "insufficient documentation." Therefore, HHSC and the OIG assert, any mandamus relief should be limited to these three denials.

In effect, the parties agree that the form of the mandamus relief granted by the trial court is erroneous. The Hospitals assert that the mandamus relief granted fails to comport with the relief as requested in their motion for summary judgment and lacks details necessary for compliance; HHSC and the OIG assert that, even if the summary judgment is otherwise

proper, the scope of the relief granted does not conform to the summary-judgment record and is overbroad. Based on the pleadings and the record before us, we agree with the parties' contentions. Because we must grant the relief the trial court should have, *see Dorsett*, 164 S.W.3d at 661, we modify the second paragraph of the order by removing it and replacing it with the following:

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiffs' Motion for Summary Judgment is granted in part and, accordingly, as to the denials issued by HHSC and reflected in the Medical Appeals Unit's three written notifications (dated: June 3, 2010; February 24, 2010; and June 2, 2010; and labeled: TPI#: 094113001; TPI# 094217902; and TPI# 094113001, respectively) HHSC must withdraw it denials on these claims, reopen these claims, and comply with the procedures set forth in Rule 371.206(B)(2) by issuing a preliminary technical denial by certified mail and notifying the Hospitals that they have 60 calendar days from the date of the notice to submit the complete medical record and that if they do not, HHSC will issue a final technical denial.

*See* Tex. R. App. P. 43.2(b) (authorizing courts of appeals to modify trial court's judgment and affirm as modified).

## CONCLUSION

Having sustained the Hospitals' second issue on appeal, we modify the judgment, as described above, and affirm the trial court's summary-judgment order as modified.

_____
Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Modified and, as Modified, Affirmed

Filed: March 18, 2021

18