COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-172-CV

 

 

 

THUMPERS CUSTOM CAR                                                  APPELLANTS

STEREO, INC. AND

WILLIAM B. STANLEY,                     

INDIVIDUALLY AND D/B/A

THUMPERS ULTIMATE AUDIO

 

V.

 

JESUS MARTINEZ,
INDIVIDUALLY                                      APPELLEES

AND AS
REPRESENTATIVE OF THE

ESTATE OF JUAN C. MARTINEZ,
DECEASED;

ADRIAN MARTINEZ; SANTIAGO MARTINEZ, 

AS NEXT FRIEND OF EDGAR MARTINEZ AND

YULIANA MARTINEZ, MINOR CHILDREN; 

AND RAUL MARTINEZ, INDIVIDUALLY AND

AS NEXT FRIEND OF CESAR MARTINEZ, 

MARIA DE JESUS MARTINEZ, 

AND MARTIN MARTINEZ, MINOR CHILDREN

 

------------

 

FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 








------------

i.  Introduction

This is an interlocutory appeal from the trial
court=s order
denying special appearances filed by Appellants Thumpers Custom Car Stereo,
Inc. (AThumpers
Inc.@) and
William B. Stanley, individually and d/b/a Thumpers Ultimate Audio
(collectively AAppellants@).  See Tex.
R. Civ. P. 120a; Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014
(Vernon Supp. 2006).  Because the
evidence is legally insufficient to support the trial court=s findings
that Appellants had continuous and systematic contacts with Texas, the trial
court=s
assertion of general jurisdiction over Appellants was erroneous.  Accordingly, we will reverse.

II.  Factual Background

William B. Stanley is a resident of Arkansas and
was doing business in Arkansas as Thumpers Ultimate Audio, later incorporated
as Thumpers Custom Car Stereo, Inc. 
Thumpers is a custom stereo store located solely in Springdale,
Arkansas.  Appellants have no offices,
warehouses, or other places of business in Texas, nor do they have any
representatives, employees, or agents in Texas.








In March 2003, Juan Martinez, a Texas resident,
was temporarily staying with family members in Arkansas.  Juan was wheelchair bound as a result of a
prior workplace injury.  While Juan was
staying in Arkansas, he and his brother, Antonio Martinez, purchased car audio
equipment from Appellants= Springdale, Arkansas store,[2]
and Appellants installed the equipment in Juan=s van at
the Springdale location.  Also in March
2003, Antonio had the van=s stereo equipment serviced at
Appellants= store in Arkansas.  Juan subsequently returned to Texas.  

Approximately one year after Appellants installed
the stereo equipment in Juan=s van,
the van caught fire on a Tarrant County roadway.  At the time of the fire, Adrian Martinez was
driving the van and Juan was a front seat passenger.  Other members of the Martinez familyCJesus,
Yuliana, Edgar, Raul, Cesar, Maria de Jesus, and Martin MartinezCwere all
passengers in the van. Juan burned to death in the fire, but the other Martinez
family members escaped with injuries. 








Appellees, Jesus Martinez, individually and as
representative of the estate of Juan C. Martinez; Adrian Martinez; Santiago
Martinez, as next friend of Edgar Martinez and Yuliana Martinez, minor
children; and Raul Martinez, individually and as next friend of Cesar Martinez,
Maria de Jesus Martinez, and Martin Martinez, minor children, (collectively AAppellees@) sued
Appellants and others in Tarrant County, claiming that the fire was partially
caused by allegedly defective stereo products and components that Appellants
installed in the van. Appellants filed special appearances, arguing that the
trial court lacked jurisdiction over them.

A. 
Evidence at the Special Appearance Hearing

Appellees opposed the special appearances,
contending that they had pleaded facts sufficient to support the trial court=s
exercise of general and specific personal jurisdiction over Appellants.[3]  To negate these alleged bases for personal
jurisdiction, Appellants presented William Stanley=s
affidavit, Jeff Bechaud=s affidavit, some of Appellants=
business records, and probate records from Washington County, Arkansas. 

Stanley explained in his affidavit that
Appellants= only store was in Springdale,
Arkansas and that Appellants had no business presence, bank accounts, real
property, personal property, or agents for service of process in Texas.  Stanley also stated that Appellants never
sold or serviced Thumpers=s products in Texas, did not
advertise or solicit business in Texas, and did not know that the Martinez van
would be driven to Texas.








Jeff BechaudCThumpers=s store
managerCstated
in his affidavit that none of the Martinez family members who were present when
Juan purchased the stereo equipment indicated that the van was from Texas, that
any of them lived in Texas, or that any of them planned to move to or return to
Texas. Bechaud=s affidavit further explained
that Thumpers=s business records documenting
the Martinez transaction prove that Thumpers sold and serviced its stereo
equipment in Arkansas and that the Martinezes were Arkansas residents when the
sale was made.  The records referenced by
Bechaud show that the transactions at issue were Abilled
to@ and Ashipped
to@ Antonio
Martinez at a Springdale, Arkansas residence. 


Finally, probate records from Washington County,
Arkansas show that  Juan, Jesus, Maria,
Antonio, and Martha Martinez were all Arkansas residents. The records indicate
that Jesus MartinezCJuan Martinez=s fatherCsought
to be named administrator of Juan=s
estate.  Jesus filed the original
petition for appointment of an administrator on April 13, 2004Ctwenty-eight
days after Juan died in Tarrant County in the van fire.  In that original petition, Jesus verified
that he, Juan, Antonio, Maria, and Martha Martinez were all residents of
Springdale, Arkansas and that Juan=s estate
included Juan=s home located in Springdale,
Arkansas.  








In an effort to establish the trial court=s
general jurisdiction over  Appellants,
Appellees presented the affidavits of Antonio and Mario Martinez,  invoices from three Texas businesses, the
deposition of William Stanley, and probate records from Parker County,
Texas.  Antonio, in his affidavit, stated
that he was with Juan when Juan purchased the stereo equipment from Thumpers
and that he had informed a Thumpers employee, over the course of several
visits, that the stereo equipment was for a person who lived in Texas. Antonio=s
affidavit also indicated that he Asign[ed]
paperwork and [made] payments on behalf of [his] brother Juan.@  Mario Martinez=s
affidavit merely indicated that he was at the store with Antonio and Juan when
they purchased the equipment and that he had overheard Antonio tell a Thumpers
employee that Juan would be returning to Texas.[4]









The invoices relied upon by Appellees at the
special appearance hearing establish that Thumpers purchased five to six
percent of its inventory from three Texas companiesCProgressive
Concepts, Inc., Southwest Electronix Supply Company, and T&W Sales,
Inc.  Finally, the Parker County, Texas
probate records show that Jesus Martinez filed an application for appointment
of a temporary and permanent administrator of Juan Martinez=s estate
in Parker County and alleged that Springtown, Parker County, Texas was both the
domicile and residence of Jesus, Juan, and Maria Martinez when Juan died.  

Following the special appearance hearing, the
trial court issued an order denying Appellants= special
appearances.  

B. 
Findings of Fact and Conclusions of Law

After denying Appellants= special
appearances, the trial court made the following findings of fact:  

1.               
Defendant William
B. Stanley was a sole proprietorship doing business as Thumpers Ultimate Audio;

 

2.               
William B.
Stanley acted by and through his employees, acting within the course and scope
of their employment with William B. Stanley;

 

3.               
Thumpers Ultimate
Audio sold and installed the stereo equipment which is the subject of this
lawsuit;

 

4.               
This Court has
Personal Jurisdiction over William B. Stanley, doing business as Thumpers
Ultimate Audio;

 

5.               
William B.
Stanley, doing business as Thumpers Ultimate Audio had continuing and
systematic contacts with the State of Texas, including:

 

a.                
multiple
contracts with Texas residents for the delivery of goods within the State of
Texas;

 

b.               
correspondence
and communications with Texas residents related to contracts to be performed in
the State of Texas;








 

c.                
returning goods
to Texas residents to demand repairs in accordance with the contracts;

 

d.               
purchasing goods AF.O.B.@ Fort
Worth, Texas;

 

e.                
paying monies in
Texas for products to be resold;

 

f.                 
applying for
credit with Texas residents;

 

g.               
agreeing to be
bound by contracts executed in Texas;

 

h.               
selling its
products to Texas residents;

 

i.                  
providing service
to Texas residents for products sold in the State of Texas, according to the
affidavits of Antonio Martinez and Mario Martinez;

 

j.                  
initiating
contacts with Texas residents in order to enter into contracts and to secure
credit;

 

k.                
doing business
with Texas residents on what Mr. Stanley admitted was Aa
systematic and continuous basis[;]@

 

l.                  
purposefully
selling the audio equipment in question to a Texas resident[,] according to the
affidavits of Antonio Martinez and Mario Martinez;

 

m.             
selling and
installing audio equipment in the van[,] which the employees of Thumpers
Ultimate Audio knew was going to be driven to Texas[,] according to the
affidavits of Antonio Martinez and Mario Martinez;

 

n.               
knowingly
contracting with a Texas resident[,] according to the affidavits of Antonio
Martinez and Mario Martinez;

 








o.               
entering into a
contract with a Texas resident[,] according to the affidavits of Antonio
Martinez and Mario Martinez/ and

 

p.               
delivering the
product in question with the expectation that it would reach Texas[,] according
to the affidavits of Antonio Martinez and Mario Martinez;

 

q.               
five to six
percent of Defendant=s annual purchases were products purchased in Fort
Worth, Texas;

 

r.                 
Mr. Stanley has
no personal knowledge of any of the facts described in his affidavit attached
to Defendant Thumpers Custom Car Stereo, Inc.=s Special Appearance and Motion to Dismiss for Lack of
Personal Jurisdiction.  Further, Mr.
Stanley is unaware of what warranties are required, what duties are imposed by
law, and has no knowledge of the terms used in his Affidavit.

 

And the trial court made the
following conclusions of law:

 

1.                                       
This Court has
general jurisdiction over Defendant William B. Stanley under the Texas Long-Arm
Statute.

 

2.                                       
This Court has
general jurisdiction over Defendant William B. Stanley d/b/a Thumpers Ultimate
Audio, under the Texas Long-Arm Statute.

 

3.                                       
The Court takes
judicial notice of the contents of the file in this matter.

 

III.  Legal Sufficiency Challenges








In their first issue, Appellants contend that the evidence is
legally insufficient to support the trial court=s findings of fact 5(h), 5(i), and 5(k),  which the trial court relied upon to conclude
that Appellants had continuous and systematic contacts with Texas.[5]

We review the trial court=s findings of fact by the same standards that we apply in
reviewing the evidence supporting a jury=s answers.  See
Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  In reviewing a finding=s legal sufficiency, we consider only
the evidence and inferences that support the challenged finding and disregard
all contrary evidence and inferences unless the evidence could not be rejected
by the fact finder.  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
We uphold the trial court's finding against a legal sufficiency
challenge if there is any probative evidence to support the finding.  Anderson, 806 S.W.2d at 795; see
also CNOOC Se. Asia Ltd. v. Paladin Res. (Sunda) Ltd., No. 5-05-01256-CV,
2006 WL 2257777, at *3 (Tex. App.CDallas Aug. 8, 2006, no pet.).

A.  Evidence Regarding Finding 5(h)








In finding of fact 5(h), the trial
court found that Appellants sold their products to Texas residents.  Because we must consider all evidence and
inferences that support the challenged finding, we look to any evidence
demonstrating that Appellants sold their products to multiple Texas
residents.  See City of Keller,
168 S.W.3d at 827.  After a thorough
review, however, the record contains no evidence that Appellants sold products
to any Texas resident (other than Juan).

Although the affidavits of Antonio and Mario Martinez assert
that Appellants knew that Juan was a Texas resident and would drive the van
back to Texas, this is not evidence that Appellants sold products to multiple
Texas residents.  No evidence exists in
the record before us that Appellants sold any products to other Texas
residents.  In fact, even Appellees= response to the special appearances
avoids alleging that Appellants sold products to Texas residents, carefully
alleging only that Thumpers sold Aits product to Texas resident [sic]@ and that Appellants Apurposefully sold the audio equipment
to a Texas resident.@

The record must contain probative evidence to support the
trial court=s finding that Appellants sold their
products to multiple Texas residents before we can uphold the finding.  See Anderson, 806 S.W.2d at 795.  The record before us however is devoid of any
such evidence.  Accordingly, we hold that
the evidence is legally insufficient to support the trial court=s finding that Appellants sold
products to Texas residents other than Juan. 
See Lewis v. Dallas Soundstage, Inc., 167 S.W.3d 906, 912 (Tex.
App.CDallas 2005, no pet.).








B.  Evidence Regarding Finding 5(i)

In finding of fact 5(i) the trial
court found that, according to the affidavits of Antonio and Mario Martinez,
Appellants provided service to Texas residents for products sold in Texas.  We have reviewed Antonio=s and Mario=s affidavits, and neither of them
state that Appellants sold products in Texas or provided service to a Texas
resident.  Both affidavits simply
indicate that Appellants installed their products in and provided service to
Juan=s van in Arkansas.  No evidence exists that would support the
trial court=s finding that the products in
question, or any other products, were sold by Appellants in Texas or that
Appellants provided service to Texas residents for products sold in Texas.  Accordingly, we hold that the evidence is
legally insufficient to support the trial court=s finding of fact 5(i). 
See Anderson, 806 S.W.2d at 795.

C.  Evidence Regarding
Finding 5(k)

In finding of fact 5(k), the trial court found that Stanley
admitted that Appellants did business with Texas residents on a systematic and
continuous basis.  The undisputed
evidence establishes that Appellants purchased inventory products from three
Texas companiesCProgressive Concepts, Inc., Southwest
Electronix Supply Company, and T&W Sales, Inc.  Appellants contend that these purchases were
not systematic and continuous and that Stanley never admitted that they were. 








When questioned about Appellants= dealings with the three Texas
entities, Stanley testified at his deposition as follows: 

Q:     Is [it] fair to say [that]
for the last five or six years you=ve been doing business with Progressive Concepts, Inc.
. . . on a continuous basis?

 

A:     Yes.

 

Q:     And likewise for however
many years since at least through B let me try again. 
Is it fair to say since 2004 you=ve been doing business with Southwest Electronix
Supply Company on a continuous and systematic basis?

 

A:     Well, it=s not
been very systematic because we use them as a backup.

 

* * *

 

Q:     To whatever level you=ve using
[sic] them, it=s systematic and continuous that you=ve used
them?

 

* * *

 

A:     We do use them as a backup
for us and it=s not continuous, it=s sporadic.

 

* * *

 

Q:     Have you been doing
business with [T&W Sales, Inc.] continuously since the date that you=all
first began a relationship?

 

A:     Yes.

 








This
testimony does not reflect that Stanley admitted to doing business with Texas
residents on a systematic and continuous basis. 
At most, it provides some evidence that for several years Appellants
purchased some products from Texas vendors. 
No evidence exists that Stanley admitted systematic and continuous
business with Texas residents, other than purchasing goods from three Texas
vendors for a period of time. 
Accordingly, we hold that the evidence is legally insufficient to
support the trial court=s finding of fact 5(k).  See id.      

We sustain Appellants= first issue.

IV. 
Trial Court=s Exercise of Personal Jurisdiction

In issues two, three, and four, Appellants challenge the
trial court=s exercise of personal jurisdiction
over them.  Appellants contend that the
contacts supported by the evidence are insufficient to support the exercise of
general jurisdiction over them, and that the exercise of jurisdiction over them
would offend traditional notions of fair play and substantial justice.  

A.  Burden of Proof and
Standard of Review for Personal Jurisdiction








 The plaintiff bears
the initial burden of pleading sufficient allegations to bring a nonresident
defendant within the provisions of the Texas long‑arm statute.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002).  A
nonresident defendant challenging a Texas court's personal jurisdiction over it
must negate all jurisdictional bases.  Id.;
Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  On appeal, we determine the special
appearance on the basis of the pleadings, any stipulations made by and between
the parties, such affidavits and attachments as may be filed by the parties,
the results of discovery processes, and any oral testimony.  Tex.
R. Civ. P. 120a(3); De Prins v. Van Damme, 953 S.W.2d 7, 18‑19
(Tex. App.CTyler 1997, writ denied).

Whether a trial court has personal jurisdiction over a
defendant is a question of law.  Marchand,
83 S.W.3d at 794 (disapproving of abuse of discretion standard of review).  But proper exercise of personal jurisdiction
must sometimes be preceded by resolution of underlying factual disputes,
typically whether a defendant has sufficient contacts with Texas.  See Botter v. Am. Dental Ass=n, 124 S.W.3d 856, 861 (Tex. App.CAustin 2003, no pet.).








Texas courts may exercise jurisdiction over a nonresident
defendant only if the exercise of jurisdiction is authorized by the Texas
long-arm statute and comports with state and federal constitutional guarantees
of due process.  Id.  The long-arm statute authorizes the exercise
of jurisdiction over a nonresident that is Adoing business@ in Texas.  Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997).  The long-arm statute defines Adoing business@ as: (1) contracting by mail or
otherwise with a Texas resident with either whole or part performance in the
state; (2) committing a tort in the state; (3) recruiting Texas residents for
employment inside or outside the state; or (4) performing any other act that
may constitute doing business.  Id.  Although the Supreme Court of Texas held that
there must be both authorization by the long-arm statute and adherence with due
process limitations, see BMC Software, 83 S.W.3d at 795, the long-arm
statute is satisfied if the exercise of personal jurisdiction comports with
federal due process limitations.  See
Michel v. Rocket Eng=g Corp., 45 S.W.3d 658, 668 (Tex. App.CFort Worth 2001, no pet.).  Accordingly, if the exercise of jurisdiction
comports with federal due process, then it is authorized by the long-arm
statute.  See Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).  

The federal due process test consists
of two parts: (1) whether the nonresident defendant purposely established Aminimum contacts@ in the forum state; and (2) if so,
whether the exercise of personal jurisdiction comports with Afair play and substantial justice.@ 
Burger King. Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct.
2174, 2183-84 (1985); Guardian Royal, 815 S.W.2d at 230-31.  A nonresident=s contacts with the forum state may give rise to either
specific or general jurisdiction.  BMC
Software, 83 S.W.3d at 795-96. 
Specific jurisdiction exists where the defendant=s alleged liability stems from an
activity conducted within the forum state. 
Id. at 796.  General
jurisdiction exists where the defendant made continuous and systematic contacts
with the forum state.  Id.








1.  No Specific
or General Jurisdiction over Thumpers Inc.

 

Appellees= special appearance evidence,
produced through affidavits and exhibits, and each of the trial court=s findings of fact and conclusions of
law, pertain exclusively to Stanley and Thumpers Ultimate Audio.  Stanley=s affidavit demonstrates that Thumpers Inc. was not created
until April 2005Cmore than two years after Juan and
Antonio purchased the stereo equipment at issue. Aside from its inclusion in
the style of the case, AThumpers Inc.@ appears nowhere in the trial court=s findings of fact and conclusions of
law.  The conclusions of law state only
that the trial court has general jurisdiction over ADefendant William B. Stanley@ and ADefendant William B. Stanley d/b/a Thumpers Ultimate Audio.@ 
No evidence or finding of fact exists pertaining to the exercise of
personal jurisdiction over Thumpers Inc. 
Applying a de novo standard of review, we hold that Thumpers Inc. negated
all jurisdictional bases and that the trial court erred by denying Thumpers
Inc.=s special appearance.  See Kawasaki Steel Corp., 699 S.W.2d
at 203. 

2.  No Specific
Jurisdiction over Stanley or Thumpers Ultimate

Audio

 








Although the trial court concluded
that it possessed general jurisdictionCnot specific jurisdictionCover Appellants, Appellees contend on appeal that the trial
court=s findings of fact also support a
conclusion that specific jurisdiction exists over Stanley and Thumpers Ultimate
Audio. 

For a court to exercise specific
jurisdiction over a nonresident defendant, two requirements must be met: (1)
the defendant=s contacts with the forum must be
purposeful conduct and not the unilateral activity of the plaintiff, and (2)
the cause of action must arise from or relate to those contacts.  Guardian Royal, 815 S.W.2d at
227.  The minimum contact analysis in a
specific jurisdiction case focuses on the relationship between the defendant,
the forum, and the litigation.  Id.
at 228.

Here, the sole transaction in
evidence was performed in Arkansas, the purchase order was placed in Arkansas,
and Antonio and Juan paid for and accepted the products in Arkansas.  Appellees nonetheless contend that Stanley
and Thumpers Ultimate Audio purposefully sold equipment to a Texas resident,
knowing that the Texas resident would return to Texas with the equipment.








Standing alone, a nonresident=s action in merely contracting with a
Texas resident for performance of a contract wholly outside of Texas is
insufficient to trigger specific jurisdiction in Texas.  See Freudensprung v. Offshore Technical
Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004); Holt Oil & Gas
Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986); Blair Commc=ns, Inc. v. SES Survey Equip. Servs.,
Inc., 80 S.W.3d 723,
730 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(holding that nonresident defendant who performed entire contract outside of
Texas was not subject to specific jurisdiction even though it initiated
contract discussions with a Texas resident, entered into a contract with a
Texas resident, and made payments in Texas); 3-D Elec. Co. v. Barnett
Constr. Co., 706 S.W.2d 135, 143-44 (Tex. App.CDallas 1986, writ ref=d n.r.e.) (same); see also, e.g.,
Holt Oil & Gas Corp, 801 F.2d at 778 (same); Stuart v. Spademan,
772 F.2d 1185, 1192‑94 (5th Cir. 1985) (same). 

The facts in the record before usCAppellants= contract with a Texas resident that
was performed wholly in ArkansasCdo not support the exercise of specific jurisdiction over
Stanley and Thumpers Ultimate Audio.  See
Guardian Royal, 815 S.W.2d at 227; Yfantis v. Balloun, 115 S.W.3d
175, 183 (Tex. App.CFort Worth 2003, no pet.). 

3.   No General
Jurisdiction Over Stanley or Thumpers Ultimate Audio

 








In their second issue, Stanley and
Thumpers Ultimate Audio contend that the contacts they had with Texas were
insufficient to subject them to the general jurisdiction of Texas courts.  Appellees contend that Appellants initiated
contacts and ultimately contracted with three Texas vendors that were Texas
residentsCSouthwest Electronix Supply Company,
Inc., Progressive Concepts, Inc. and T&W Sales, Inc.Cfor the delivery of goods within
Texas; communicated with these Texas vendors for the purchase of stereo
equipment; made five to six percent of Appellants= total inventory purchases in Texas through these vendors;
purchased equipment AF.O.B.@ Fort Worth, Texas; paid monies under these contracts in
Texas; applied for and secured credit from Texas residents;  sold stereo equipment to a Texas resident who
would be traveling back to Texas; and provided service and warranties to a
Texas resident. 








General jurisdiction allows a forum
to exercise jurisdiction over a defendant even if the cause of action did not
arise from or relate to a defendant=s contacts with the forum. 
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414-16, 104 S. Ct. 1868, 1872-73 (1984); Guardian Royal, 815 S.W.2d at
228.  General jurisdiction is only
present, however, when a defendant=s contacts with a forum are Acontinuous and systematic,@ a more demanding minimum-contacts analysis than specific
jurisdiction.  Guardian Royal, 815
S.W.2d at 228.  General jurisdiction is
premised on the notion of consent.  See
Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 808 (Tex.
2002), cert. denied, 537 U.S. 1191 (2003).  That is, by invoking the benefits and
protections of a forum=s laws, a nonresident defendant
consents to being sued there.  Id.  When determining whether general jurisdiction
exists, we do not view each contact in isolation.  Id. 
Rather, all contacts must be carefully investigated, compiled, sorted,
and analyzed for proof of a pattern of continuing and systematic activity.  Id.; Schlobohm v. Schapiro, 784
S.W.2d 355, 359 (Tex. 1990).

Here, the contacts that Appellees
rely on to establish Appellants= alleged continuous and systematic
contacts with Texas revolve exclusively around two types of alleged contactsCAppellants= one-time sale of and installation of
stereo equipment in Arkansas and Appellants= purchase of five to six percent of their inventory from
three Texas vendors.[6]

The evidence is undisputed that the
one-time sale to Juan and Antonio occurred exclusively in Arkansas.  Juan and Antonio ordered the equipment, paid
for it, had it installed, and had it serviced a week later, all in
Arkansas.  We hold that the one-time sale
of stereo equipment in Arkansas, even if to a known Texas resident, is insufficient
to establish continuous and systematic contacts for general jurisdiction.  See Guardian Royal, 815 S.W.2d at 228.








Although Appellants made five to six
percent of their inventory purchases from Texas vendors, Amere purchases, even if occurring at
regular intervals, are not enough to warrant a State=s assertion of in personam
jurisdiction over a nonresident [defendant] in a cause of action not related to
those purchased transactions.@ 
Helicopteros, 466 U.S. at 418, 104 S. Ct. at 1874 (holding that
purchasing eighty percent of helicopter fleet and other equipment was not
sufficient, by itself, to warrant assertion of personal jurisdiction).  The contacts relied upon by Appellees are not
sufficient to satisfy the demanding requirement of showing continuous and
systematic contacts.  See Coleman,
83 S.W.3d at 807-09 (holding that AATCC's purchases from Texas vendors will not alone support
the exercise of general jurisdiction@); Yfantis, 115 S.W.3d at 181 (holding that Athe mere fact that Yfantis entered
into this contract with a Texas corporation does not support the trial court's
exercise of general jurisdiction over him@).

Looking at all of Appellants= contacts, and focusing on the
quality of the contacts rather than the quantity, collectively, Appellant=s actions do not establish a pattern
of continuous and systematic contacts.  Coleman,
83 S.W.3d at 809-10; Schlobohm, 784 S.W.2d at 359.  We hold that Stanley and Thumpers Ultimate
Audio did not purposefully establish minimum contacts with Texas.  We sustain Stanley and Thumpers Ultimate
Audio=s second issue.

 

 








V.  Conclusion

Having sustained Appellants= first two issues, we need not
address Appellants= issues three and four.  See Tex.
R. App. P. 47.1.  We reverse the
trial court=s order and render judgment
dismissing the claims against Stanley, Thumpers Ultimate Audio, and Thumpers
Inc.

 

SUE WALKER

JUSTICE

 

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED:  March 1,2007











[1]See Tex. R. App. P. 47.4.





[2]Antonio Martinez=s affidavit indicates
that Juan Martinez actually paid for the equipment, but the receipts show
Antonio Martinez as the recipient or purchaser.





[3]We are not convinced that
Appellees= pleadings sufficiently
plead such facts, but for purposes of our analysis we will so presume.





[4]Appellants objected to
this statement on hearsay grounds, and the trial court initially sustained
their objection.  However, the trial
court subsequently withdrew that ruling and took the issue under
advisement.  Ultimately, the trial court
did not finally rule on the objection. 





[5]Appellees point to no
evidence and provide no arguments supporting findings of fact 5(h), 5(i) and 5(k).





[6]In support of their
general jurisdiction arguments, Appellees rely upon several of the findings of
fact that we have determined are not supported by any evidenceCfindings of fact 5(h),
5(i), and 5(k).  Consequently, we do
not  include an analysis of these
nonfacts in our minimum contacts anaysis.